**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| GREGORY FRENCH, | CASE NO. 5:25-CV-00285-AMK |
| Plaintiff, | |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Plaintiff Gregory French seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  (ECF Doc. 1.)  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter is before the undersigned by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (ECF Doc. 7.)

For the reasons set forth below, the Commission's final decision is **REVERSED** and **REMANDED**, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Order.  On remand, the ALJ should: consider the entire record; accurately discuss the evidence; clearly articulate the rationale for his RFC findings; and ensure that his stated rationale builds an accurate and logical bridge between the evidence and the result.

## I.    Procedural History

Plaintiff filed his SSI and DIB applications on November 9, 2022 and January 20, 2023 respectively, alleging an onset date of October 1, 2022.  (Tr. 70-71.)  He alleged disability due to a heart condition, manic depression, bipolar, and schizophrenia.  (Tr. 59, 72.)  Mr. French's

applications were denied initially and upon reconsideration (Tr. 70-71), and he requested a hearing (Tr. 160).  After conducting a hearing on Mr. French's claims, an Administrative Law Judge ("ALJ") issued a decision denying both applications on September 8, 2024.  (Tr. 14-32.)  On December 17, 2024, the Appeals Council denied Mr. French's request to review the ALJ decision, making the September 2024 decision the final decision of the Commissioner.  (Tr. 1-4.)

Mr. French filed the instant Complaint on February 13, 2025 challenging the Commissioner's final decision denying him disability benefits.  (ECF Doc. 1.)  The matter is fully briefed.  (ECF Docs. 9, 12.)  Mr. French raises one assignment of error: "The Administrative Law Judge's finding that Plaintiff retained a Residual Functional Capacity for light work is not supported by substantial evidence."  (ECF Doc. 9, p. 6.)

## II.    Evidence

### A.    Personal, Educational, and Vocational Evidence

Mr. French was born in 1984 and was 38 years old on the alleged disability onset date, making him a younger individual under Social Security regulations on the alleged onset date. (Tr. 25.)  He had at least a high school education.  (*Id.*)  Mr. French has not worked since October 1, 2022, the alleged onset date.  (Tr. 59. 72.)

### B.    Medical Evidence

#### 1.    Relevant Treatment History[1]

On September 19, 2022, Mr. French presented to Eric Peterson, M.D., at Aultman Orthopedics and Sports Medicine complaining of chronic left shoulder pain.  (Tr. 628-30.)  Mr. French reported chronic pain and instability for over 20 years after being in a bicycle accident that dislocated his shoulder.  (Tr. 629.)  Since the initial injury, he said he had dislocated his left

---

[1] The Court's summary of the medical evidence is not exhaustive and is generally limited to the evidence cited in the parties' briefs that is relevant to the legal and factual issues before the Court.

shoulder approximately 15 times, with three dislocations in the past few weeks.  (*Id.*)  He was able to relocate the shoulder himself.  (*Id.*)  Mr. French reported a bit of numbness and tingling during dislocation episodes but denied current neurological symptoms.  (*Id.*)  A physical examination showed tenderness of the greater tuberosity, the bicipital groove, and the glenohumeral joint region of the left shoulder.  (Tr. 630.)  Active and passive range of motion on the left were normal but anterior relocation and apprehension tests were positive, as was a load and shift test on the left shoulder.  (*Id.*)  Both shoulders demonstrated 5/5 strength on abduction, flexion, and external and internal rotation.  (*Id.*)  Dr. Peterson reviewed an x-ray of the left shoulder, which showed significant bipolar glenohumeral bone loss with a large Hill-Sachs lesion event and advanced anterior glenoid bone loss.  (*Id.*)  He diagnosed recurrent anterior dislocation of the left shoulder and ordered a CT scan and MRI of the shoulder.  (*Id.*)

From October 9 to October 13, 2022, Mr. French was hospitalized after experiencing cardiac event.  (Tr. 538-40.)  During this hospital stay, a physical examination showed full range of motion in all extremities.  (Tr. 539.)

Mr. French underwent an MRI of the left shoulder on November 7, 2022, which demonstrated a chronic Hill-Sachs deformity, irregularity of the anterior and inferior glenoid and the adjacent soft tissues.  (Tr. 723-24.)  On November 22, 2022, Mr. French underwent a CT scan of the left shoulder.  (Tr. 631-32.)  It showed an Osseous Bankart lesion and a Hill-Sachs deformity.  (Tr. 632.)

Mr. French returned to see Dr. Peterson on December 21, 2022 for review of the CT and MRI.  (Tr. 622-26.)  He reported moderate, aching, sharp, dull, frequent, and continuous pain in his left shoulder that was aggravated by lifting, throwing, and range of motion.  (Tr. 624.)  A physical examination was unchanged from the previous visit.  (Tr. 625.)  Dr. Peterson reviewed

3

the MRI and CT scans.  (*Id.*)  He diagnosed recurrent anterior dislocation of shoulder, recommended surgery, and advised Mr. French to return as needed.  (Tr. 625-26.)

On January 16, 2023, Mr. French underwent a cardiac evaluation to determine whether elective rotator cuff surgery was advisable.  (Tr. 894-99.)  Based on his cardiac symptoms and antiplatelet treatment, David Manova, M.D., concluded surgery would be high risk and advised Mr. French to wait until he fully recovered from his acute myocardial infarction.  (Tr. 894.)

Mr. French underwent a consultative examination with Mary Ann Hayden, APRN, CNP-BC, on July 29, 2024.  (Tr. 1400-34.)  On physical examination, Mr. French's gait was steady, his posture straight, he could sit, stand, and walk without difficulty, and he reported being able to lift a gallon of water with each hand without difficulty.  (Tr. 1404.)  Manual muscle testing demonstrated that he had 3/5 motor functioning in his left shoulder abductors and 5/5 motor functioning in his left shoulder rotators.  (Tr. 1405.)  His grasp strength, manipulation, and pinching were normal in both hands.  (Tr. 1406-07.)  His shoulder flexion, extension, abduction, adduction, and rotation were designated "normal" (Tr. 1409-10), although APRN Hayden noted that shoulder flexion was 95 degrees on the left rather than a complete 180 degrees (Tr. 1409). APRN Hayden observed that Mr. French could reach overhead and forward but had a difficult time reaching overhead with his left arm and shoulder.  (Tr. 1418.)

Plaintiff was referred for a left shoulder x-ray, which found no radiographic evidence of acute fracture, glenohumeral dislocation, or acromioclavicular separation.  (Tr. 1420.)

2.      **Opinion Evidence**

On May 25, 2023, state agency medical consultant Jogendra Singh, M.D., found Mr. French had the following severe, medically determinable impairments: chronic ischemic heart disease with or without angina; unspecified arthropathies (abnormality of the left shoulder);

4

depressive bipolar and related disorders; and anxiety and obsessive-compulsive disorders.  (Tr. 62, 75.)  Dr. Singh also completed a physical Residual Functional Capacity ("RFC") assessment.  (Tr. 65-66, 78-79.)  He opined that Mr. French could: occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; stand or walk four hours and sit six hours in an eight-hour workday; occasionally climb ramps and stairs; and never climb ladders ropes or scaffolds.  (Tr. 65, 78.)  Dr. Singh further opined: Mr. French should avoid all exposure to unprotected heights, heavy moving machinery, and other hazards; and his reaching overhead, front, and laterally should be "limited" on the left side due to Osseous Blankart lesion and chronic Hill-Sachs deformity.  (Tr. 65-66, 78-79.)  On reconsideration, on November 24, 2023, state agency medical consultant Diane Manos, M.D., affirmed all of Dr. Singh's findings.  (Tr. 86, 88-90, 98, 100-02.)

Consultative examiner APRN Hayden completed a medical source statement on July 29, 2024.  (Tr. 1421-33.)  She opined, in relevant part, that Mr. French could: occasionally lift or carry up to 20 pounds; sit for one hour, stand for 20 minutes and walk for 10 minutes at one time; sit for one hour, stand for 30 minutes, and walk for 10 minutes total in an eight-hour workday; never reach overhead, occasionally handle and push/pull, and frequently finger and feel with the left hand; occasionally push/pull and frequently reach overhead, handle, finger, and feel with the right hand; never crawl; occasionally balance, stoop, kneel, crouch, and climb ladders or scaffolds; and frequently climb ramps and stairs.  (Tr. 1421-24.)

## C.      Function Report

Mr. French completed an Adult Function Report on February 17, 2023.  (Tr. 303-10.)  He reported that he went shopping in stores for food and clothes.  (Tr. 304.)  He did not care for any other people and cared for a pet with the help of his brother.  (Tr. 308.)  His conditions did not cause him problems with personal care (*id.*) but did limit his ability to lift, walk, climb stairs, and

5

understand (Tr. 306).  He was right-handed.  (*Id.*)  He prepared frozen meals daily and did laundry without help, but it took him a few hours, and he could only lift five pounds.  (Tr. 309.)

**D.      Hearing Testimony**

At a hearing on May 14, 2024, Mr. French testified in response to questions from the ALJ and his attorney.  (Tr. 34-48.)  A Vocational Expert ("VE") also testified.  (Tr. 49-57.)

The VE testified that a hypothetical individual of Plaintiff's age, education, and work experience, with the functional limitations described in the ALJ's RFC determination, could not perform Plaintiff's prior work, but could perform representative positions in the national economy, including marker, office helper, and mail clerk.  (Tr. 50, 52.)

If the individual were reduced to a sedentary level of exertion, there would still be jobs available, including document preparer, polisher of eyeglass frames, and surveillance system monitor.  (Tr. 53-54.)  If the individual was limited to occasional reaching to the left or right with the left upper extremity, the VE testified that the sedentary surveillance system monitor job would be available, but no other identified jobs would be available.  (Tr. 55.)  If the individual could never reach overhead with their left upper extremity, it would preclude all of the identified jobs except for surveillance system monitor and document preparer.  (Tr. 55-56.)

### III.      Standard for Disability

Under the Social Security Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).

To make a determination of disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations, summarized as follows:

1.  If the claimant is doing substantial gainful activity, he is not disabled.

2.  If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4.  If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 404.1520, § 416.920[2]; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform other work available in the national economy. *Id.*

---

[2] Since the DIB and SSI regulations cited herein are generally identical, for convenience, in most instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq. The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

## IV.     Law & Analysis

### A.     Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)).  The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  "'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  Even if substantial evidence supports a claimant's position, a reviewing court cannot overturn the

8

Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Although an ALJ decision may be supported by substantial evidence, the Sixth Circuit has explained that the "'decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-547 (6th Cir. 2004))).  A decision will also not be upheld where the Commissioner's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**B.      Sole Assignment of Error: The ALJ's Failure to Accurately Characterize and Consider the Entire Record Deprived the RFC of the Support of Substantial Evidence and Failed to Build a Logical Bridge Between the Evidence and Result**

Plaintiff argues that the ALJ's physical RFC—limiting him to light work with occasional overhead reaching and frequent reaching in other directions—lacks the support of substantial evidence because the ALJ "ignored crucial diagnostic and physical examination evidence, . . . [and] mischaracterized medical evidence" regarding his left shoulder.[3]  (ECF Doc. 9, p. 7.) Specifically, he challenges the ALJ's finding that he did not have a "medically determinable musculoskeletal impairment[]" during the disability period, arguing this finding was based on the following factual errors and omissions: (1) an erroneous finding that Aultman Orthopedics treatment records "consistently reported normal physical examination findings"; (2) an erroneous

---

[3] Plaintiff also asserts, with little elucidation, that the ALJ "improperly disregarded state agency physician opinion evidence."  (*See* ECF Doc. 9, pp. 7, 9.)  The Court finds this argument to be inadequately developed and therefore waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

finding that Plaintiff's "range of motion was normal in all joints" at his consultative examination; (3) an erroneous statement there are "no musculoskeletal diagnoses in the record"; and (4) a failure to "even mention diagnostic evidence related to the left shoulder," including an MRI and a CT scan.  (*Id.* at pp. 8-9; *see* Tr. 20.)  Plaintiff argues that "[t]he ALJ's factual errors and lack of consideration of key medical evidence renders his decision as lacking in the support of substantial evidence" and that the ALJ's written decision therefore "does not 'build an accurate and logical bridge between the evidence and the result.'"  (ECF Doc. 9, p. 9.)

The Commissioner responds that the ALJ's characterization of the examination findings in the orthopedic records was "broadly accurate," and that the consultative examination report was "not as clear as Plaintiff suggests."  (ECF Doc. 12, pp. 8-10.)  As to the ALJ's statement that there are no musculoskeletal diagnoses in the record and failure to mention MRI or CT findings, the Commissioner asserts Plaintiff's arguments are "ineffective in view of the decision as a whole" because the ALJ adopted an RFC that was supported by substantial evidence and included limitations accounting for the "left shoulder issues."  (*Id.* at pp. 10-11.)

A claimant's "residual functional capacity is the most he can still do despite his limitations."  20 C.F.R. § 404.1545(a)(1).  "The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)).  An ALJ must assess a claimant's "residual functional capacity based on all the relevant evidence in [the] case record," 20 C.F.R. § 404.1545(a)(1), such as: medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; effects of symptoms; evidence from attempts to work; need for a

structured living environment; and work evaluations, *see* SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 61 Fed. Reg. 34474, 34477 (July 2, 1996).

While the Commissioner is correct that the ALJ acknowledged some of Mr. French's complaints regarding his left shoulder and adopted an RFC that accounted for left shoulder limitations, Plaintiff is also correct that the ALJ's findings regarding limitations attributable to his left shoulder impairment are premised on factual misstatements and material omissions.

While the substantial evidence standard is deferential, the Sixth Circuit has emphasized that the chief limitation to that deference "is the requirement that all determinations be made based upon the record in its entirety." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) (citing *Houston v. Sec'y of Health & Hum. Servs.*, 736 F.2d 365, 366 (6th Cir. 1984)). "This requirement that determinations be made in light of the record as a whole helps to ensure that the focus in evaluating an application does not unduly concentrate on one single aspect of the claimant's history[.]" *Id.*; *see also* 20 C.F.R. § 404.1520(e) (findings regarding RFCs will be "based on all the relevant medical and other evidence" in the case record).

An ALJ need not "discuss each piece of data in [his] opinion, so long as [he] consider[s] the evidence as a whole and reach[es] a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (per curiam)).  But he must perform "a proper analysis of the medical evidence under agency regulations and controlling case law," and may not "cherry-pick[] select portions of the medical record" to support his findings.  *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013); *see also Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where ALJ was "selective in parsing the various medical reports").  In other words, an ALJ cannot simply "pick and choose" evidence in

the record, "relying on some and ignoring others, without offering some rationale for his decision." *Young v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 644, 649 (E.D. Mich. 2004).

Instead, the ALJ's explanation must "build an accurate and logical bridge between the evidence and the result." *Fleischer*, 774 F. Supp. 2d at 877; *see id.* at 881 ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.") (citations omitted).  And an explanation premised on a mischaracterization may deprive the analysis of the support of substantial evidence.  *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 191 (6th Cir. 2009) (finding ALJ decision lacked the support of substantial evidence where the decision was premised on "a clear mischaracterization of the facts"); *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787-88 (6th Cir. 2009) (finding ALJ lacked substantial evidence to support RFC after mischaracterizing evidence).

Here, at Step Two of the sequential analysis, the ALJ acknowledged that Mr. French "alleged a torn rotator cuff, resulting in difficulty lifting."  (Tr. 20.)  But the ALJ's additional finding that Mr. French "has not had any medically determinable musculoskeletal impairments" "[d]uring the period of adjudication" (*id.*) is not supported by substantial evidence, and his summary of the supporting evidence contains both misstatements and material omissions.

First, the ALJ asserted that treatment records from Aultman Orthopedics do not support Plaintiff's allegations and "consistently reported normal physical examinations" including findings in September 2022 and June 2023 that Plaintiff's "strength, sensation, and range of motion were normal throughout all extremities."  (Tr. 20.)  The list of exhibits generally cited by the ALJ in support of this finding does not contain an Aultman treatment record from June 2023, but it does contain treatment records from September and December 2022.  (*See* Tr. 622-30,

1032-39 (dup.).)  And while the ALJ is correct that Plaintiff's strength, sensation, and range of motion were normal in both visits (*see* Tr. 625, 630), his broader statement that the Autman records "consistently reported normal physical examinations" (Tr. 20) is not accurate.

Dr. Peterson's physical examination findings at both Aultman visits noted tenderness of the greater tuberosity, bicipital groove, and glenohumeral joint region on the left, and positive results in response to the anterior relocation test, apprehension test, and load and shift test.  (Tr. 625, 630.)  Further, the examination findings were noted in September 2022 in the context of: complaints of recurrent shoulder dislocations over a period of 20 years, with three dislocations in the past few weeks; a left shoulder x-ray showing significant bipolar glenohumeral bone loss with a large Hill-Sachs lesion event and advanced anterior glenoid bone loss; a diagnosis of recurrent anterior dislocation of the left shoulder; and an order to follow up with a CT scan and MRI.  (Tr. 629-30.)  Dr. Peterson made the same findings in December 2022, in the context of: a left shoulder MRI that "demonstrat[ed] sequela of multiply recurrent anterior shoulder instability with a very large Hill-Sachs lesion as well as significant anterior glenoid bone loss"; a left shoulder CT that "demonstrat[ed] sequela multiply recurrent anterior shoulder instability with at least 20 to 30% loss of the anterior bony glenoid rim"; a continued diagnosis of recurrent anterior dislocation of the left shoulder; and a recommendation for "surgical management" through a "left shoulder open Latarjet procedure."  (Tr. 625.)  Considering the complete Aultman treatment records, the Commissioner's assertion that the ALJ's characterization of those records was "broadly accurate even if . . . not all findings were completely unremarkable" (ECF Doc. 12, pp. 8-9) misses the mark.  Not only was it factually inaccurate for the ALJ to say the Aultman records "consistently reported normal physical examinations," but the factual error was further compounded by the ALJ's additional failure to acknowledge Plaintiff's complaints of recurrent

left shoulder dislocations, abnormal clinical imaging (including an x-ray, MRI, and CT scan), left shoulder diagnosis, and Dr. Peterson's recommendation for surgical intervention. The record thus requires a finding that the ALJ mischaracterized Plaintiff's orthopedic treatment records.

Second, the ALJ detailed the objective findings of consultative examiner APRN Hayden, including a finding that Plaintiff's "range of motion was normal in all joints." (Tr. 20.) In fact, as Plaintiff points out, APRN Hayden's examination notes indicate that Plaintiff's left shoulder flexion was only 95 degrees, when a normal range of motion for shoulder flexion is 180 degrees. (Tr. 1409.) APRN Hayden also observed Plaintiff "had a difficult time reaching overhead with his left arm/shoulder" and "was able to perform ROM [range of motion], but complained of pain in his left arm." (Tr. 1418.) The Commissioner argues that APRN Hayden's report regarding Plaintiff's range of motion "is not as clear as Plaintiff suggests" because she noted a limited range of motion in her examination notes but later stated Plaintiff "was able to perform ROM." (ECF Doc. 12, p. 10.) Nevertheless, in the context of the ALJ's notable failure to accurately acknowledge other objective medical evidence relating to Plaintiff's left shoulder impairment, the Court concludes that the ALJ also mischaracterized the consultative examination findings.

Third, the ALJ asserted that "there are no musculoskeletal diagnoses in the record – including in [APRN] Hayden's report." (Tr. 20.) On the contrary, as discussed above, Dr. Peterson diagnosed recurrent anterior dislocation of the left shoulder in treatment records the ALJ himself cited, basing that diagnosis on abnormal examination findings and diagnostic imaging that the ALJ failed to acknowledge or discuss, and ultimately recommended surgical intervention. (Tr. 622-30.) Although Plaintiff sought clearance from cardiology to undergo the recommended surgery, it was denied based on his recent cardiac problems. (Tr. 894.) Based on this record, the Court must conclude the ALJ again mischaracterized the records when he found

14

Plaintiff had "no musculoskeletal diagnoses" and made material omissions when he failed to acknowledge the abnormal examination findings and clinical imaging supporting the diagnosis.

The Commissioner suggests that any mischaracterization of the consultative examination findings was harmless because APRN Hayden's "assessment of Plaintiff's ability to overhead and forward reach were, ultimately, largely consistent with what the ALJ found in the RFC." (ECF Doc. 12, p. 10.)  He further suggests that the ALJ's failure to acknowledge Plaintiff's left shoulder diagnosis and discuss the MRI and CT findings was also harmless because "the issue is whether the RFC limitations adequately accounted for any shoulder limitations supported by the record" and "the ALJ specifically included limitations in the RFC finding pertaining to Plaintiff's left shoulder issues." (*Id.* at pp. 10-11.)  These arguments are not persuasive.

The ALJ adopted a physical RFC limiting Plaintiff to light work, as follows:

> The claimant can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs. He can frequently stoop, kneel, crouch, and crawl. <u>He can frequently reach with the left upper extremity. He can occasionally reach overhead with the left upper extremity</u>. He cannot work around moving machinery or unprotected heights and he cannot drive commercially.

(Tr. 22 (emphasis added).) [4]  In support of this Step Four finding, the ALJ again acknowledged Plaintiff's allegations of a torn rotator cuff and complaints of shoulder pain (Tr. 23) but also cited to and reiterated his prior finding at Step Two that Plaintiff "does not have any medically determinable musculoskeletal impairments" (Tr. 24).

To establish disability under Social Security's regulations, Plaintiff must demonstrate that he suffers from "a severe medically determinable physical or mental impairment" or combination of impairments that meet statutory duration requirements.  20 C.F.R. § 416.920(a)(4)(ii).  A medically determinable impairment ("MDI") is an impairment that results from "anatomical,

---

[4] The ALJ also included mental RFC limitations, but those limitations are not at issue in this case.  (*See* Tr. 22.)

physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. An MDI may only be "established by objective medical evidence from an acceptable medical source," and not by a "statement of symptoms, a diagnosis, or a medical opinion" alone. *Id.* Evidence that Plaintiff's impairments are "medically determinable" is critical to Plaintiff's claims because agency guidance provides that ALJs "must consider *only* limitations and restrictions attributable to medically determinable impairments" when assessing the RFC at Step Four. SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 61 Fed. Reg. 34474, 34476 (July 2, 1996) (emphasis added).

Here, the ALJ relied on factual misstatements and material omissions to support his finding that the records do not contain a diagnosis or objective medical evidence sufficient to establish a "medically determinable musculoskeletal impairment[]." (*See* Tr. 20, 24.) But the records, as discussed above, clearly contain both objective medical evidence and a diagnosis from an acceptable medical source supporting a musculoskeletal MDI for his left shoulder. Certainly, to the extent the ALJ found there was no MDI after considering the relevant objective evidence and diagnosis, he did not acknowledge that evidence or explain why it was inadequate to establish an MDI. This is significant because SSR 96-8p instructs ALJs to consider only "medically determinable" impairments when formulating the RFC. SSR 96-8p, 61 Fed. Reg. at 34476. Thus, if the ALJ truly found no evidence to support an MDI impacting Plaintiff's left shoulder, SSR 96-8p indicates he should not include any related limitations in the physical RFC.

In this context, the fact that "the ALJ specifically included limitations in the RFC finding pertaining to Plaintiff's left shoulder issues," (ECF Doc. 12, pp. 10-11) does not account for the ALJ's misstatements, omissions, and resulting gaps in logic. For example, if the ALJ considered the mischaracterized/omitted evidence, it is not clear how he justified a finding that Plaintiff had

16

no musculoskeletal MDIs.  And if the ALJ did find no musculoskeletal MDIs, it is not clear how he justified including left arm limitations in the physical RFC.  Further, since the ALJ included left arm limitations in the RFC despite finding no musculoskeletal MDIs, there is concern that he may have reduced the level of limitation due to SSR 96-8p's admonition against considering non-MDIs in setting RFC limitations.  Because it is not clear whether or how the ALJ factored the mischaracterized and/or omitted evidence into his Step Four findings, the Court finds the ALJ inadequately articulated his RFC analysis, failed to support that analysis with substantial evidence, and ultimately failed to build "an accurate and logical bridge between the evidence and the result." *Fleischer*, 774 F. Supp. 2d at 877.

For the reasons set forth above, the Court finds the ALJ's written decision does not clearly demonstrate that he considered the entire record and adequately articulated the basis for his RFC findings.  Accordingly, the Court finds that Plaintiff's sole assignment of error has merit and remands the ALJ's decision for further proceedings consistent with this Order.

## V.    Conclusion

For the foregoing reasons, the final decision of the Commissioner is **REVERSED** and **REMANDED**, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Order.  On remand, the ALJ should: consider the entire record; accurately discuss the evidence; clearly articulate the rationale for his RFC findings; and ensure that his stated rationale builds an accurate and logical bridge between the evidence and the result.

March 13, 2026

/s/Amanda M. Knapp
AMANDA M. KNAPP
United States Magistrate Judge

17